UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VINCENT RIZZUTO,                    ) NO. CV 14-1052-AS
                                    )
                                    )
            Plaintiff,              ) **MEMORANDUM OPINION AND**
                                    )
      v.                            ) **ORDER OF REMAND**
                                    )
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security,                           )
                                    )
                                    )
            Defendant.              )
_____

**PROCEEDINGS**

On February 25, 2014, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability, and disability insurance benefits ("DIB"). (Docket Entry No. 3). On July 21, 2014, Defendant filed an Answer and the Administrative Record ("A.R."). (Docket Entry Nos. 11, 12). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 10, 18). On October 8, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket

1

Entry No. 21).   The Court has taken this matter under submission without oral argument.   See C.D. Local R. 7-15; "Order Re: Procedures in a Social Security Case," filed February 26, 2014 (Docket Entry No. 7).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, formerly employed as a boat engine technician and painter, insurance damage estimator, truck mechanic, auto body shop repairman, and auto body shop supervisor (A.R. 26), asserts disability beginning April 1, 2010, due to visual difficulties, left elbow pain, chronic bronchitis, left knee fracture, head trauma,[1] kidney stones, and depression.   (A.R. 19, 214, 230).   On May 23, 2012, a hearing was opened and then continued in order for Plaintiff to obtain representation and submit additional documents. (Id. 19, 49-55).

On August 3, 2012, the Social Security Administration ("SSA") issued a Notice of Hearing to be held on September 17, 2012.   (Id. 34-38).   On August 22, 2012, Plaintiff signed the Acknowledgment of Receipt (Notice of Hearing), indicating he would be present at the hearing.   (Id. 150).   Also on August 22, 2012, Plaintiff retained counsel.   (Id. 147).   On August 23, 2012, counsel sent a letter to the SSA, requesting the hearing date be rescheduled because he had

---

[1]   Although there is some ambiguity about the date, it appears that on February 15, 2010, Plaintiff was severely beaten by two men.   (See, e.g., A.R. 239-40, 300 (an examiner on June 21, 2012, noted that "claimant states that he was jumped about a year and a half ago"), 340; but see id. 230 (in reporting a change in condition, Plaintiff reported he had been attacked by two men on August 17, 2010); Joint Stip. 7 ("On August 17, 2010, plaintiff was attacked by two men") (citing A.R. 230)).

a previously scheduled hearing on that date. (Id. 149).  There is no indication in the record that the Administrative Law Judge ("ALJ"), Gail Reich, ever acknowledged the letter or informed Plaintiff or his counsel whether the request had been approved or denied.

On September 17, 2012, the hearing went forward over Plaintiff's objections.  The ALJ examined the record and heard testimony from Plaintiff, medical expert ("ME") Thomas J. Maxwell, and vocational expert ("VE") Nick Corso, Jr.  (Id. 19, 20, 58-76). Plaintiff's counsel did not appear at the hearing.  (Id. 19, 58-60).

On January 12, 2013, the ALJ issued a decision denying Plaintiff's application for DIB.  (Id. 19-28).  The ALJ found that Plaintiff has the severe impairments of: chronic bronchitis, history of kidney stones, knee fracture, left eye impairment, history of head trauma from the attack, and residuals from a left elbow injury.  (Id. 21).

The ALJ determined that through Plaintiff's last insured date, September 30, 2010, Plaintiff has the residual functional capacity ("RFC") to perform a "limited range of the reduced light level of work," and can sit, stand, or walk six hours of an eight-hour workday, and can occasionally do posturals, except that he should not: climb ropes, ladders or scaffolds; work at unprotected heights or around hazardous machinery; do work that requires depth perception; or be exposed to concentrated dust, fumes, or odors. (Id. 22-23).

3

Relying on the testimony of the VE, the ALJ determined that through the last insured date, Plaintiff was unable to perform his past relevant work as an auto body shop repairman and auto body shop supervisor, (Id. 26, 73), but was able to perform work at the light level such as cashier II, sales attendant, and information clerk. (Id. 27). The ALJ also determined that Plaintiff was able to perform such sedentary work as final assembler, document preparer, or ticket checker. (Id. 28).

Accordingly, the ALJ found that Plaintiff was not disabled at any time from the alleged disability onset date of April 1, 2010, through September 30, 2010, the last insured date. (Id. 21, 28).

## PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ erred (1) because Plaintiff did not knowingly and intelligently waive his right to counsel; and (2) because she did not satisfy her duties to Plaintiff. (Joint Stip. 2).

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

4

1998) (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997).  It is relevant evidence  "which a reasonable person might accept as adequate to support a conclusion." <u>Hoopai</u>, 499 F.3d at 1074; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996)).  To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); <u>see</u> <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." <u>Ray v. Bowen</u>, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007) (same).  However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim.  <u>See</u> <u>Torske v. Richardson</u>, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." <u>Reddick</u>, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

**APPLICABLE LAW**

"The Social Security Act defines disability as the 'inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability. 20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity. Id. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe

6

impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling him to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all his impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether - taking into account the claimant's age, education, work experience and RFC - there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Tackett, 180 F.3d at 1098.

7

1

2

**DISCUSSION**

3

4    After consideration of the record as a whole, the Court finds

5    that the Commissioner's findings are not supported by substantial

     evidence or free from material[2] legal error.

6

7    **A.   The ALJ Failed to Fully Develop the Record, Resulting in**

8        **Prejudice and Unfairness to Plaintiff**

9

10   Plaintiff contends that at the hearing he "manifested his

11   intent to be represented by counsel by informing the ALJ that he

     had retained counsel, but that his counsel could not appear" and,

12   therefore, Plaintiff "did not knowingly and intelligently waive his

13   right to counsel." (Joint Stip. 3, 4). He also claims that the

14   hearing was prejudicial and unfair because the ALJ failed to comply

15   with her heightened duty to adequately develop the record, and did

16   not "conscientiously and scrupulously 'probe into, inquire of, and

17   explore' all the relevant facts to protect plaintiff's interests,"

18   especially with regard to: (1) the additional documents that were

19   not placed in Plaintiff's file; (2) Plaintiff's alleged

20   psychological and neurological impairments; and (3) Plaintiff's

21   testimony regarding his symptoms, medication, and any side effects.

22   (Id. 3, 7). Plaintiff also contends that requiring the hearing to

23   go forward without counsel present, over Plaintiff's objection,

24   deprived him of a meaningful opportunity to be heard. (Id. 6).

25

26        [2]    The harmless error rule applies to the review of
     administrative decisions regarding disability. See McLeod v.
27   Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart,
     400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision
28   will not be reversed for errors that are harmless).

### 1. **Applicable Federal Law**

In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly, and to assure that the claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d 1273, 1288 (9th Cir. 1996); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ has a basic duty to inform herself about facts relevant to her decision. Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, Jr., concurring). When the claimant is unrepresented, the ALJ must be "especially diligent" in exploring for all relevant facts. Tonapetyan, 242 F.3d at 1150. Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to "conduct an appropriate inquiry." Id.

A plaintiff can knowingly and intelligently waive his statutory right to counsel. Duns v. Heckler, 586 F. Supp. 359, 364 (N.D. Cal. Apr. 4, 1984); Perez v. Astrue, No. CV 07-06726-MAN, 2009 WL 3170041, at *3 (C.D. Cal. 2009). Even if the waiver is deficient, to obtain a remand the plaintiff must demonstrate prejudice or unfairness in the proceedings. Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1378 (9th Cir. 1979). The real issue in such cases, however, is not whether the waiver was knowing or intelligent, but whether, without the representation, the ALJ met her heightened duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" to protect the plaintiff's interests. Cox v.

9

<u>Califano</u>, 587 F.2d 988, 991 (9th Cir. 1978) (citation omitted); <u>see also</u> <u>Vidal v. Harris</u>, 637 F.2d 710, 713 (9th Cir. 1981); <u>Key v. Heckler</u>, 754 F.2d 1545, 1551 (9th Cir. 1985).  This duty includes diligently ensuring that both favorable and unfavorable facts and circumstances are elicited at the administrative hearing.  <u>Cox</u>, 587 F.2d at 991; <u>Vidal</u>, 637 F.2d at 713; <u>Key</u>, 754 F.2d at 1551.  Remand is only warranted if the plaintiff can demonstrate prejudice or unfairness in the administrative proceeding as a result of not having counsel present.  <u>Vidal</u>, 637 F.2d at 713.

Additionally, a claimant is entitled to receive meaningful notice and an opportunity to be heard before his claim for benefits may be denied.  <u>Boettcher v. Sec'y of Health & Human Servs.</u>, 759 F.2d 719, 722-23 (9th Cir. 1985); <u>Udd v. Massanari</u>, 245 F.3d 1096, 1099 (9th Cir. 2001).  "The essence of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  <u>Id.</u> at 723 (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976)).  A hearing affords the opportunity for a claimant to present his case and for an adjudicator to see the claimant and "engage in a searching factual inquiry . . . and should result in more accurate decision-making."  <u>Id.</u>

**2.  <u>Analysis</u>**

The following colloquy took place at the hearing:

10

ALJ:  -- with the hearing.[3]

CLMT: You think that's fair to me?  It says in writing, in black and white, in your letter to me, that if the attorney can't make it within the timeframe -- you sent the letter on August third, and that has to be within 20 days of the hearing.  And he sent you the letter.

ALJ: Okay, all right.  . . .

. . . .

CLMT:  When did he send you the letter?

ALJ: Okay, let's go off the record for a minute.

(At this point there ensued an off-the-record discussion.)

(A.R. 58).

The hearing then went back on the record:

ALJ: Okay.  And we -- as we just discussed before going on the . . . record, there was a hearing in May. We continued it to give you an opportunity both to supplement . . . with the new additional records, and an opportunity to get an attorney.  That was --

---

[3]   This is how the transcription of the hearing abruptly commenced.  (A.R. 58).

CLMT: Did [INAUDIBLE] forward the DR report to you?

ALJ:  Sir?  We're going forward with the hearing. The record is as it is.  You've gotten a copy of it and we're going forward today.  You've just told me that if the record was complete, I told you what we had.

CLMT:  But I'm asking you, did she forward that to you?

ALJ:  She doesn't forward anything to me. The record is as-is.  Everything is in there.  It's electronic and you've received a copy of it.  And, you had your opportunity, last May you were told, if you want an attorney you need to get one immediately so we can go forward at the next hearing.  There will be no more continuances so we need to go forward today.  We've set this time aside, we have our experts present and ready to go and we're going to proceed.

(Id. 59).

A review of the record shows that on August 3, 2012, the Administration sent Plaintiff notice of the September 17, 2012, continued hearing date.  (Id. 34-38).  The notice indicated that if a postponement was requested, the "ALJ will decide whether you have a good reason for requesting the change. . . . [¶] If it is found

12

you have a good reason for your request, we will set a new time and place for your hearing." (Id. 35).   The SSA's <u>Manual on Social Security Administration Hearings, Appeals and Litigation Law</u> ("HALLEX")[4] suggests that "[i]f the ALJ does not find good cause to postpone the hearing, [she should] notify the claimant and representative that the hearing will be held as scheduled, and that failure to attend may result in a dismissal.   Include in this notice an explanation of the ALJ's reasons for not finding good cause, and document the file (i.e., retain a copy of any written notice or prepare and retain a report of contact of any oral notice).")   HALLEX I-2-3-20(C)(1).   The Court finds no such notice in the record.

On August 22, 2012, Plaintiff retained counsel (A.R. 147), and on August 23, 2012, twenty-five days prior to the scheduled hearing, counsel sent a letter to the SSA requesting a postponement because he had another hearing previously scheduled for September 17, 2012 (id. 149).   No response regarding the postponement request can be found in the record, and Plaintiff appeared at the hearing without his retained counsel.   (Id. 19, 58).

At the hearing, Plaintiff objected to going forward without

_____

[4]   The HALLEX is an internal policy manual that does not impose judicially enforceable duties on the ALJ.   <u>See</u> <u>Lockwood v. Comm'r Soc. Sec. Admin.</u>, 616 F.3d 1068, 1072 (9th Cir. 2010) ("HALLEX does not impose judicially enforceable duties on either the ALJ or this court."); <u>see also</u> <u>Clark v. Astrue</u>, 529 F.3d 1211, 1216 (9th Cir. 2008) ("HALLEX is strictly an internal Agency manual, with no binding legal effect on the Administration or this court.").

counsel and also expressed concern that all of the relevant documents had not been received by the ALJ. (Id. 58-61). Nevertheless, the ALJ went forward with the hearing, stating "[w]e've set this time aside, we have our experts present and ready and we're going to proceed." (Id. 59). The ALJ's decision also included the following statement:

> The claimant not only waited a prolonged period to secure representation but waited until after the second notice[5] of the rescheduled hearing to obtain an attorney and then obtained an attorney who would not be available for the already scheduled hearing. Under the circumstances, claimant was not entitled to any further continuances.

(Id. 19).

Where a claimant is unrepresented, there are certain procedures that ALJs are to follow to ensure that the claimant is "capable of making an informed choice about representation." See, e.g., Perez, 2009 WL 3170041, at *3 (citing HALLEX I-2-6-52). There is no indication in the record that the ALJ followed these procedures or discussed a waiver of the right to counsel with Plaintiff at the hearing. In any event, the Court does not construe this case as one involving *waiver* of the right to

---

[5] The record does not include *two* notices informing Plaintiff of the rescheduled hearing. The *only* notice in the record is the notice dated August 3, 2012. (A.R. 34)

counsel.[6]  Plaintiff knew he had a right to counsel at the hearing and had exercised that right by retaining counsel to represent him at a hearing – in fact, he explicitly objected to going forward without counsel.  Additionally, counsel had provided the SSA with ample notice of his conflict with the scheduled date, such that the ALJ could have informed the ME and the VE, ahead of time, that the hearing was going to be postponed, thereby obviating  the need for the ALJ to proceed with the hearing merely because she had "set this time aside" and the experts were "present and ready to go."[7] (A.R. 59).

Nor does the Court construe Plaintiff's attendance at the hearing as his implied acquiescence to going forward with the hearing without his retained counsel.  Indeed, the SSA had informed Plaintiff that if he failed to attend the hearing, his action would be subject to dismissal for failure to attend.  (See, e.g., id. 34 ("If you do not come to the hearing and it is not found you have a good reason, your request for hearing may be **dismissed**."); see also

---

[6] Even if the Court were to consider whether Plaintiff waived his right to counsel, there is no evidence of a knowing and intelligent waiver of the right to counsel in the record.  In fact, Plaintiff objected to going forward without counsel.  However, the Court finds that, regardless of whether the record is analyzed to determine whether the hearing was fair despite a deficient waiver, whether - given the absence of counsel - the ALJ met her heightened duty to fully and fairly develop the record, or whether Plaintiff was deprived of a meaningful opportunity to be heard, a remand is warranted.

[7] Indeed, the ALJ's annoyance with the situation, ostensibly because the time had been set aside and the ME and VE were "present and ready to go," does not constitute "good cause" for denying counsel's request for postponement four weeks after that request was made and at a hearing that counsel was unable to attend.

id. 50-51; McNatt v. Apfel, 201 F.3d 1084, 1087, 1088 (9th Cir. 2000) (when claimant "simply refuses to attend a hearing, either personally or through counsel," "[he] is not entitled to judicial review of a dismissal for failure to attend") (citation omitted). Thus, Plaintiff may well have decided to attend the hearing in order to avoid this result.[8]

Preliminarily, the Court notes that the entire hearing transcript is only seventeen pages long.  In fact, without the testimony of the VE and the ME, and the initial colloquy regarding the missing exhibits and explanation of the proceedings, it is only nine pages long.  Although there is no requirement that an administrative hearing last any specific length of time, the brevity of the record of the administrative hearing in this case, coupled with the absence of counsel, and Plaintiff's objections to proceeding without his counsel present at the outset, casts doubt on the diligence of the ALJ's inquiry.  See Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992) (per curiam) (stating that "[a]n adequate hearing record is indispensable because a reviewing court may consider only the Secretary's final decision, the evidence in the administrative transcript on which the decision was based, and the pleadings.") (citing Russell v. Bowen, 856 F.2d 81, 84 (9th Cir. 1988)); Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994) (explaining that "[a]lthough the length of a hearing is not dispositive, it is a consideration," and concluding that a ten-

_____

[8] Here, in contrast to the circumstances in McNatt, it was Plaintiff who appeared at the hearing without his retained representative.

minute hearing that was transcribed in eleven pages was inadequate); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (stating that a "scant" thirteen-page transcript "reveals a host of lost opportunities to explore the facts"); Lashley v. Sec'y of Health and Human Servs., 708 F.2d 1048, 1052 (6th Cir. 1983) (concluding that the ALJ did not probe sufficiently during a twenty-five minute hearing). Here, the Court questions whether the ALJ met her duty to fully and fairly develop the record to ensure that Plaintiff's interests were protected in the absence of his counsel.

Additionally, at the hearing, although Plaintiff acknowledged that he had received a copy of the record, he repeatedly asked whether certain records had been received and included. (See, e.g., A.R. 59, 61, 64, 67). Despite Plaintiff's objection to going forward with the hearing without his counsel preset, and Plaintiff's questions and obvious concern that the record still was not complete, the ALJ never asked Plaintiff, on the record, whether he had reviewed the records or needed more time to review them, whether the exhibits were complete or whether Plaintiff had any objections to, or problems with, them. Nor did the ALJ seek to determine the content of the documents that Plaintiff claimed were not in the record. Based on Plaintiff's repeated questions regarding whether the "DR records"[9] had been received and were included in the record, it appears that Plaintiff may not have had

---

[9]    These records appear to relate to the police report documenting the attack on Plaintiff. (A.R. 64, 241, 256-58, 298, 318).

an opportunity to review the two CDs of exhibits he had received prior to the first hearing.[10]   (See id. 51).

Moreover, Plaintiff's lack of counsel is also apparent in the ALJ's failure to fully elicit information from Plaintiff, and in the ALJ's questioning of the ME and the VE.

For instance, the ALJ only briefly questioned Plaintiff about Plaintiff's prior work experience.   (Id. 62).   Plaintiff spontaneously testified to the job title for his two most recent jobs, and stated he had to leave one of them because of a kidney stone attack and the other because of "another kidney problem" (id.).   The ALJ did not ask Plaintiff to expand upon this response, or inquire as to the current status of Plaintiff's kidney stone, and other "kidney problem."   (Id.)   With respect to Plaintiff's impairments, although Plaintiff volunteered some information (see, e.g., id. 61-67), the ALJ did not ask Plaintiff further questions about: (1) the nature, degree, or areas of his symptoms; (2) his medical history, including frequency and purpose of visits; (3) any other treatment Plaintiff had received or was getting; (4) any neurological/mental limitations resulting from his head trauma; (5)

---

[10]   Plaintiff, who is homeless (A.R. 62), stated at the first hearing that he had received two CDs with the exhibits but had been unable to access them (id. 51).   He also stated at that hearing that he had talked to Concita Morrow at the SSA who indicated to him that new information regarding his battery case had been received.   (Id. 53-54; see also id. 64, 241, 256-58, 298, 318). However, the ALJ stated that nothing had been received more recently than a year prior.   (Id. 54).   The DR report does not appear to be part of the record.   Nor are there any medical documents relating to the 2010 incident.

how long he could do certain activities, including lifting and carrying, walking and standing; (6) the extent of his functional limitations with respect to his vision problems,[11] chronic bronchitis, elbow injury, knee injury, and head trauma, and the effect of any pain on these limitations; (7) Plaintiff's alleged depression;[12] or (8) whether Plaintiff wished to testify to anything else.[13]  (Id. 61-67, 69-72).  On several occasions, when Plaintiff attempted to interject additional information, the ALJ and/or the ME cut him off, or the ALJ went off the record.  (See, e.g., id. 58, 61, ("Okay, so now, we're back on the record.  We've relayed the ground rules."), 68 ("ME:  Okay, I'm speaking now.  ALJ:  Yeah, you'll have your opportunity, okay?  No more interrupting, okay?" and "CLMT [to ME]: I don't know if you had seen this --  [¶] ALJ: Okay, what did we just say, that you'll have your opportunity.")).  Finally, the ALJ did not question Plaintiff about the fact that the record did not include any medical records documenting Plaintiff's treatment for the 2010 beating incident.  Indeed, even the date of

---

[11]  The ME asked Plaintiff questions about his vision in an attempt to clarify Plaintiff's allegations, and about the pain in his knee.  (See, e.g., A.R. 64-66, 66-67).

[12]  In fact, the ALJ mentioned Plaintiff's claim of depression only once in the decision.  See A.R. 19 (noting that Plaintiff alleged disability beginning April 1, 2010, "due to visual difficulties, left elbow pain, chronic bronchitis and depression")).

[13]  The ALJ briefly questioned Plaintiff about his schooling (A.R. 62); his source of income (id. 62); his ability to drive (id. 69-70); how he gets his food (id. 70); whether he looks for work or has started to work (id. 70-71); whether he sleeps in his motorhome (id. 71); and for further information regarding an eye infection that Plaintiff claimed to have gotten worse in the past six months (id. 72).

that incident cannot be accurately determined from the records. (See supra note 1). Nor did the ALJ seek to obtain a neurological or psychological consultative examination.

After swearing in the VE, the ALJ asked the VE to summarize Plaintiff's past relevant work, by skill and exertional level. (Id. 73). The ALJ asked the VE to assume a hypothetical individual "who had all the limitations that had just been identified." (Id.). However, because the ALJ never identified any limitations herself, the Court can only assume that the VE relied on the earlier testimony of the ME that Plaintiff's impairments created certain functional work limitations, including lifting and/or carrying twenty pounds occasionally and ten pounds frequently; sitting for six hours; standing/walking for six hours; no climbing ladders, ropes or scaffolds; occasional posturing; avoidance of unprotected heights and hazardous machinery; work that does not require depth perception; and no exposure to concentrated dust, fumes and odors. (Id. 69, 71). After the VE identified various light and sedentary jobs that such an individual could still perform, the ALJ asked Plaintiff whether he had any questions of the VE, which he did not, and the ALJ concluded the hearing. (Id. 74-75). Thus, Plaintiff never asked the VE any questions about Plaintiff's ability to do these suggested jobs based on his physical and/or mental limitations (if any), the lifting, carrying, manipulative, postural, or visual requirements required for those jobs, or questions that might serve to demonstrate that the VE's testimony was inconsistent with the Dictionary of Occupational Titles and needed additional explanation.

The ALJ also routinely questioned the ME regarding the ME's findings of Plaintiff's impairments.  Although the ME challenged Plaintiff about his visual problems, as reflected in the medical record, and also questioned him about the pain in his left knee (id. 64-66, 66-67), he otherwise apparently relied only on Exhibits 1F-8F in forming his opinions.  However, these exhibits do not even include any medical records relating to Plaintiff's head trauma and any treatment he may have received as a result of that incident. The ALJ asked the ME to list Plaintiff's impairments "in order of severity."  Id. 68.  The ME indicated chronic bronchitis, amblyopia of the left eye, history of kidney stones, a history of knee fracture, history of left elbow injury in 2007, and history of head trauma in 2010, and testified that the impairments did not individually or in combination meet or equal a listing.  (Id. 68-69).

After the ME's testimony concluded, the ALJ asked Plaintiff whether he had any questions for the ME, and Plaintiff indicated that he had no questions.  (Id. 71).  Thus, Plaintiff never asked the ME about his conclusions regarding Plaintiff's alleged functional ability to lift and carry twenty pounds occasionally and ten pounds frequently; and sit, stand, or walk for six hours of an eight-hour workday.  Nor did Plaintiff question the ME about the order of severity in which the ME listed Plaintiff's impairments, i.e., whether it was from most to least severe, or vice versa, or about medical records, if any, that might have refuted the ME's testimony.  (Id. 71-72).  Moreover, although Plaintiff attempted to raise several issues during the ME's testimony, including

21

Plaintiff's continuous eye infection and the severe pain he experiences when exposed to bright light, the ME never acknowledged or asked Plaintiff any questions about these issues. (See, e.g., id.).

The ALJ spent almost no time delving into any of Plaintiff's impairments, his treatment, dates of treatment, where treatment was obtained, work history, daily activities,[14] and alleged limitations. Nor did the ALJ ask any questions of the ME or VE.  If Plaintiff's counsel had been present at the hearing, he could have asked Plaintiff questions to expand on these and other issues, including Plaintiff's depression, the head trauma incident and any resulting treatment and neurological deficits, as well as Plaintiff's functional limitations, including his ability to sit, stand, walk, lift, and carry.  Counsel could have also obtained additional testimony from the VE and the ME regarding their opinions in light of Plaintiff's limitations.  If the ALJ had diligently ensured that both favorable and unfavorable facts and circumstances were elicited at the hearing, the additional evidence adduced might have altered the ALJ's decision.[15]  (See Joint Stip. at 7-8, 11).

The Court finds the ALJ's refusal to continue the hearing so that Plaintiff's counsel could attend - given the circumstances in

---

[14]  The ALJ primarily relied on Plaintiff's April 26, 2011, Function Report with respect to his daily activities and did not seek to obtain any recent information about daily activities from Plaintiff at the hearing.

[15]  The Court expresses no opinion on the merits.

this case - and the ALJ's failure to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" at the hearing so as to protect Plaintiff's interests and afford him a meaningful opportunity to be heard, establishes prejudice and unfairness, warranting remand. Vidal, 637 F.2d at 713-14 (interests of justice demand that case be remanded where claimant was prejudiced by inadequate examination of vocational expert and lack of counsel at hearing).

B.    **Remand Is Required**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the credit-as-true rule, a district court should remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." Id. n.26; see also Harman, 211 F.3d at 1179-81 (where there are outstanding issues that must be resolved

before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate).

Here, the Court has determined that Plaintiff was prejudiced by the ALJ's refusal to continue the hearing so that Plaintiff's counsel could attend. Because outstanding issues must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, the Court finds that further administrative proceedings would serve a useful purpose and remedy defects.

**CONCLUSION**

For all of the foregoing reasons, this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   December 19, 2014.


                              /s/
                              ALKA SAGAR
                              UNITED STATES MAGISTRATE JUDGE

24